Martin *vs.* Atkinson.

No. 43.—GEORGE W. MARTIN, plaintiff in error, *vs.* TOLLISON T. ATKINSON, defendant in error.

]1.] Where there is a clear mistake, or other good cause for amending a sworn answer, the practice is to file an additional, or supplemental answer.

[2.] Amendments will be allowed after replication filed.

[3.] Amendments to sworn answers will be allowed in cases of mistake, fraud, surprise, and the discovery of new matter, but with great caution and difficulty. There is, however, no general rule, and the application is made to the discretion of the Court, and each case depends very much upon its own merits.

[4.] When it is made to appear to the Court, upon oath, that the defendant intended to swear when he first put in his answer, as he desires by the amendment to be permitted to swear, it will be allowed

*Application to amend an Answer to a Bill in Equity, in Pike Superior Court, decided by Judge* FLOYD, *February Term,* 1848.

The facts necessary for the points adjudicated, are found in the opinion of the Court.

ARNOLD, for plaintiff in error.

FACTS.—Plaintiff filed his bill *vs.* defendant to August Term, 1845, of Pike Superior Court, alleging, among other things, a purchase of a lot of land in Pike, by plaintiff, of defendant, and the giving of notes and a title to another lot of land in Dooly county, in payment thereof; and defendant by his answer, sworn to and filed on the 24th March, 1846, admitted these facts; and a replication was then filed to said answer, and afterwards, at the August term, 1846, a trial was had, and a decree rendered for the defendant, from which the plaintiff appealed, and three terms after the appeal entered, the defendant, at February term, 1848, comes and moves leave to amend his answer in this particular, alleging, as his excuse, that (though he knew the fact at the time of swearing his original answer, and told it to his solicitor's agent) his solicitor's agent deemed it unimportant, and giving no excuse for the long delay.

*Quere.*—Should the amendment be allowed?

It is a general rule, that amendments of *sworn* bills and answers are to be allowed with great caution. *Mit. Pl.* 55, 325. 1 *J. C. R.* 434. 3 *Ib.* 410. 6 *Ib.* 81.

Amendments are never allowed in the answer itself, but only a supplemental answer on a special application therefor. 2 *V. & B.* 256. 10 *Ves.* 285, 401. And even this supplemental answer is admitted with great difficulty, if prejudicial to plaintiff. 2 *V. & B.* 256. 19 *Ves.* 631. And it must be to arrest *a mistake of facts*, which is probable of itself. 1 *V. & B.* 150. 2 *Ibid,* 163, 256. 4 *Johns. Ch. R.* 375. And no case can be found of amendment allowed on the ground of laches or misapprehension of the party defendant, himself. 19 *Ves.* 628. 4 *J. C. R.* 375. Amendments have been allowed *in small matters*, on an affidavit of *surprise or mistake.* 2 *Mad. Ch.* 376. And a motion to amend was refused, and this decision affirmed on appeal to the House of Lords, where the defendant having by answer consented to confirm an award made by her father, though the motion was accompanied by an affidavit, that her answer was prepared by her father, who had wronged her in the award, and that she never read the award. 2 *Vern.* 434.

From all the cases, we draw the general conclusion, that though amendments or answer, are in the discretion of the Court, this discretion is to be cautiously exercised in reason, and in conformity with he usual practice of the Court, and in conformity with established precedents.    Ancient and uniform practice of the Court is as binding as positive order. 2 *Kelly*, 421. *Mit. P.* 2 *n. c.*  Our general rule is, that amendments are never allowed in material parts of an answer, except where there has been *surprise* or *mistake of fact*, and then only by a supplemental answer ordered on a motion therefor, accompanied by an affidavit, that when the original answer was put, the defendant *did not know* the circumstances on which he applies, or any other circumstances upon which he ought to have stated the fact otherwise, or that when he swore his original answer, he meant to swear in the same manner he  now asks to swear.    2 *Mad. Ch.* 376, 7, *and passim.*    4 *Johns. Ch. R.* 375.

Thus the law stood for ages before our adopting Statute, and the only question which remains, is, have we any Statute or rule which alters this ?    There is no Statute of jeofails in Equity cases in Georgia, and the only rule of Court, bordering on this subject,  is the concluding article of the 4th rule of Equity cases, which reads as follows : And the Judge shall have power to order *such* amendments as are *usually* made in open Court."

Now, as for the *time* of making amendments.    The general rule is, that irregularities and errors must be corrected at the first term after they are discovered and taking distinct steps afterwards, is a waiver of the irregularity.    2 *J. C. R.* 249.    1 *Ib.* 191.    *G. M. Dudley's Rep.* 47, and this. rule applies as well in Equity as Law.    After issue joined and publication passed, and witnesses examined it is too late.    *Mit. Pl.* 55, 325.

Then this amendment does not come up  to any of the precedents, nor within the letter or spirit of any of the rules and is erroneous and should be disallowed.

GREEN & CAUSEY, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

This application to amend the answer was made after replication filed—indeed after a decree had been rendered for the defendant, although there was no trial,  the plaintiff being unprepa-

Martin *vs.* Atkinson.

red for trial, confessed a judgment for the defendant.  Upon the appeal, and after two continuances, the defendant, upon notice, moved the Court for leave to file a supplemental answer by way of amendment.  The application was accompanied with the affidavit of the party, his solicitor, and a person by the name of Greene, which set forth the following facts : The defendant resides in the county of Pike, and his solicitor in the county of Crawford.  The answer was drawn by the solicitor in the absence of the defendant, from notes of the facts taken by him.  It was transmitted to a friend, not being a lawyer, with a request to read it to the defendant, correct it wherein he directed it to be corrected, procure his oath and file it in office.  It was accordingly read to the defendant, who stated at the time, that one statement in it was erroneous, to wit: The statement, that a tract of land belonging to him, lying in the county of Dooly, was received from the complainant in payment for a tract of land sold him by the defendant, and that the truth was, that the Dooly tract was taken by him in payment of other debts owing him by the complainant.  The alteration was not then made, the person who read the answer to the defendant assuring him that it was not a material matter, and would not affect his legal rights, and farthermore assuring him that his counsel would amend the answer in that particular, when he came to Court.

Under these circumstances, the oath was taken and the answer filed.  The amendment sought to be made is in the particular, in relation to the Dooly tract of land.  The defendant, desiring now to make it what he had said it ought to be at the beginning.  It is conceded that the proposed amendment will be prejudicial to the complainant.

The presiding Judge allowed the amendment, and the complainant excepted.

[1.] It is argued that the replication being filed and the cause for a hearing on the appeal, the application to amend is too late.  There appears to be no particular limit to the time within which an application to file a supplemental answer must be made.

[2.] It may be made, and if allowable, will be allowed after replication has been filed.  But not unless the cause is in such a state, that the plaintiff may be placed in the same situation he would have been in, had the answer been correct at first.  Hence, application to amend has been refused, after the cause has been

set down for a hearing. *Dan. Ch. Pl. and Pr.* 916, 917. *Curling vs. Marquis of Townshend,* 19 *Vesey,* 628, 631. *Jackson vs. Parish,* 1 *Sim.* 505. *McDougal vs. Purier,* 4 *Russ.* 486. Our practice, as to amendments, is scarcely so strict as the English. But as to time, we do not think that in England this application would be too late. The replication here was filed, but it does not appear that any order had been taken setting the cause down for a hearing. It was in that state, when the allowance of the amendment would not place the plaintiff in any worse condition than he would have been in, had the answer been correct at first. Particularly, since the Chancellor would permit such an amendment only upon such terms as would be equal and just. It is his duty to see to it, that the plaintiff is not surprised by the amendment.

Formerly, it was the practice to permit a party to amend his answer, by taking it off the file and correcting it, in case of mistake, or where new matter has come to his knowledge, since it was put in, or in case of surprise, or of fraud. *Dan. Pl. and Pr.* 912. *Story's Eq. Pl. secs.* 896 *to* 901. *Bowen vs. Cross,* 4 *Johns. Ch. R.* 375. 1 *Bland.* 162. *Smith vs. Babcock,* 3 *Sumner,* 583. 1 *Bailey Eq. R.* 375. 2 *P. Williams,* 424. *Amb.* 62. 1 *V. & B.* 186. 10 *Vesey,* 401. 1 *Eq. Cas. Ab.* 29.

Lord Thurlow, however, changed the practice, not permitting the answer to be taken off the file, but allowing a supplemental answer to be filed, and by that course leaving to the parties, the effect of what had been sworn before, with the explanation given by the supplement. 10 *Vesey,* 284. 8 *Vesey,* 79. 10 *Ib.* 401. 4 *J. C. R.* 375. 1 *Barbour's Ch. Pr.* 165, 6. 2 *V. & B.* 256. 1 *Smith's Ch. Pr.* 2 *Am. Ed.* 270. This practice continues, and is unquestionably best, for it insures justice between the parties, and holds the defendant still perfectly amenable to the criminal law, if he be guilty of perjury.

Now an amendment by supplement, will be allowed to correct a mistake as to matter of fact, in the answer. *Strange vs. Collins,* 2 *Vesey & B.* 168. *Taylor vs. Obee,* 3 *Pri.* 83. *Ridley vs. Obee, Wightw.* 32. So also the rule is extended to other analagous cases, as where the defendant, at the time of putting in the original answer, was ignorant of a particular circumstance, he has been permitted to introduce that circumstance. *Jackson vs. Parish,* 1 *Sim.* 505. *Tidswell vs. Bowyer,* 7 *Sim.* 64. 9 *Ib.* 365. 2 *Mer.* 57.

So where a defendent had wished to state a fact in his original answer, but was induced not to do it, by the mistaken advice of his solicitor, he was allowed to state it, by supplement. *Nail vs. Punter*, 4 *Sim.* 474. *See also* 4 *J. C. R.* 375.

So where, by the misrepresentations of the plaintiff, the defendant was induced to admit certain securities against himself; he. was permitted to correct the admission. *Curling vs. Marquis of Townshend*, 19 *Vesey*, 628.

It is true, however, that in all cases where the amendment proposed to be made, is prejudicial to the plaintiff, it will be allowed, if at all allowed, with great caution—in the language of the books, *with great difficulty.* Indeed, all amendments to sworn bills or answers, are allowed with extreme caution. The reason is, that parties will not be permitted to experiment under oath upon the rights of their adversaries, and then evade the pains and penalties of perjury by amendments. The defendant must state what he expects to put upon the record, and the application must be accompanied with affidavits. *Daniel's Plead. and Prac.* 914. *Edwards vs. McLeay*, 2 *V. & B.* 256. *Western Reserve Bank vs. Stryker*, 1 *Clarke*, 380. *V. & B.* 149. 4 *Sim.* 54. 1 *Vesey*, 628, 631. 5 *Beav.* 432. 2 *Ib.* 236. 4 *J. C. R.* 375.

[3.] From all of which we learn, that with great caution, and even difficulty, amendments by way of supplement, will be allowed in case of mistake, surprise, new matter and fraud; and in cases analogous to these cases, upon principle. No unvarying rule, however, obtains, which will embrace all cases. The question of amendment is addressed to the discretion of the Court. Each case must depend upon its peculiar merit or demerit. " The question always is applied to the discretion of the Court, in the particular instance." *Per Lord Eldon, in Wells vs. Wood*, 10 *Vesey*, 401.

Amendments are allowed, because necessary to the ends of justice. In applications, such as I am now considering, it is necessary that the defendant make such a case as that it shall appear *to be due to general justice*, that the record be altered. *Daniel's Plead. & Prac.* 915.

In *Wells vs. Wood, (ubi supra,)* Lord Eldon says, " A defendant making this application, must make out such a case, that it shall appear due to general justice, to permit the issue to be altered." " There can be no doubt, (says Ch. Kent,) that the ap-

plication ought to be narrowly and closely inspected, and *a just and necessary case* clearly made out." *Bowen vs. Cross,* 4 *J. C. R.* 377.

It would seem a logical inference from this proposition, that where a case is manifestly just, where the ends of general justice would be promoted, the amendment would be allowed.

[4.] Now this is not a case of the mistake of a fact by the defendant, for from the beginning he was cognisant of what the answer was, as well as what it ought to be. Nor was there fraud or surprise here ; nor is it pretended that new matter has been discovered since the answer was put in. This case does not therefore fall under any of those heads. We are fully satisfied, notwithstanding, that it is fully within the principles upon which amendments are allowed. It is, in the first place, a case of manifest justice ; in the language of Chancellor Kent, *a just and necessary case.* The correction of the answer is, as to a point material for the defence ; upon the correction depends several hundred dollars. The error in the answer, was made originally by defendant's solicitor—it was as to him, a mistake. It was perceived and protested against, at the time that the defendant swore to the answer. He swore to it with a protest against its truth, and was induced to swear to it by two assurances, upon which he seems to have rested—one, that the error would not effect his legal rights, and the other, that the error would be, in time, and at the proper time corrected. I know that no mistake as to legal rights will justify an amendment, yet this assurance, and the impression made by it, are material, as characterizing the whole transaction. It never was the purpose of this defendant to answer otherwise, than as he now proposes to make his answer. In moral verity, he has never answered otherwise than according to the amendment asked.

The proposition now made is not so much to alter *the answer,* as to make the record correspond with what the answer, in fact, was. This application is no after-thought, suggested in the progress of the cause, by the developements in the case, by, evidence, trials, interlocutory judgments, or any thing else. It springs not out of the late exigences of the defence, but was contemplated, asked, desired and expected from the beginning. The defendant personally, is not in default. He may be ignorant, for no knowing, cautious, artful man, would have sworn to this an-

Martin *vs.* Atkinson.

swer, as he did. His simplicity and his honesty are equally apparent. Where these combine to prevent justice, it is a clear case for relief. It is impossible that this application can be made from corrupt motives. The history of the matter, as disclosed in the affidavits, demonstrates the impossibility of such motives. The equal rights of mankind—what Lord Eldon calls *general justice*, as much as the particular equity due to this individual, require the application to be granted.

Again, the allowance of this amendment would not impair the strength of the penal law against perjury, nor conflict with the general policy of the criminal administration. For the reason, that as this whole matter appears upon the record, the defendant is obviously, not guilty of perjury. So obvious is his innocence, that it can do no harm as a precedent.

This case, although not in its precise facts, like any one which I have been enabled to find in the books, falls within the principles of some of the adjudications, where amendments have been allowed. The Solicitor, drawing the answer from his own notes, taken from the defendant's statements, inserted by mistake an admission contrary to the wish and intention of his client, and highly injurious to his interests. To correct that admission, is the object of the amendment. Like to this in principle, is the case of *Nail vs. Punter*, 4 Sim. 474. In that case, the defendant had wished to insert a fact in his original answer, but was induced to leave it out, upon the mistaken advice of his Solicitor. The amendment was allowed. Here the defendant intended not to insert a material fact, to-wit: the admission about the Dooly tract of land, and it was inserted, not by the mistaken advice of his Solicitor, but by a mistake, in fact, by his Solicitor, as to what his client wished him to insert. This case seems to me stronger than the former, in this—that the former case went upon a mistake by counsel, as to the legal rights of his client; in this case, the mistake of counsel was as to *a fact* to be admitted, or not, in the answer. For, generally, a mistake as to legal rights, is not good cause for allowing amendments.

In *Bowen vs. Cross*, 4 J. C. R. 375, application was made to file a supplemental answer upon the affidavit of defendant's Solicitor, stating that an account containing the items of the debt alleged to be due from the plaintiff to the defendant, was handed to the Solicitor at the time of drawing the answer, and that the

Martin *vs.* Atkinson.

Solicitor omitted to attach it to the answer, from a belief that it was unnecessary. The amendment proposed, was to attach the account to the answer, which was allowed by Chancellor Kent. After a review of the cases relative to this doctrine, the Chancellor says—" in the present case, the defendant moves to make sundry amendments, but there is no ground for the indulgence, except as to the mistake sworn to have arisen on the engrossment of the answer, and not discovered until after it was filed, and as to the omission of the Solicitor to make the schedule referred to in his affidavit, a substantive part of the answer. The defendant handed the document to the Solicitor, when he was to prepare the answer, and no doubt it was his intention that it should have been used in a way the most fit and proper for his defence. The omission to annex it, may be imputed to a mistake in the Solicitor; and after some hesitation, I am inclined to permit a supplemental answer to be filed, in respect to those two omissions, and as to them only." This decision goes upon two grounds—the *intention* of the defendant that the schedule should be annexed to his answer, and the *mistake* of the Solicitor in omitting to attach it. Now, in the case before us, the *intention* of the defendant not to answer, as he did originally answer, and the *mistake* of the Solicitor in drawing the answer erroneously, are proven. What distinguishes it from the case decided by Chancellor Kent? In some respects, it is really a stronger case than that.

The case of *Livesey vs. Wilson*, 1 *V. & B.* 149, is nearer to this case than any I have seen; and is, of itself, sufficient authority for our judgment. In that case, the defendant, in answer to a bill for specific performance of a contract, admitted that he took possession of the whole property, in pursuance of the contract, but afterwards applied for leave, to put in a supplemental answer to limit the admission to part of the premises only.

Lord Eldon refused the amendment, using remarkable language, in substance as follows : " I will not grant the motion, unless the defendant will tell me, upon his oath, that when he swore to his original answer, *he meant to swear* in the sense in which he, by his application, desires to be permitted to swear." The amendment was refused, upon the ground that the defendant would not upon oath say, that he originally intended to swear, as he now desired to be permitted to swear. Now, this case is the very case required to be made by Lord Eldon. In *that* case the

defendant desired to correct an admission—so also in *this*. In *that*, the Chancellor refused the amendment, because the defendant would not tell him upon oath, that he intended at first to swear, as he now desired to swear. In *this* case, the defendant comes into Court, and upon oath says, that when he first swore to his answer, he intended to swear as he now desires to be permitted to swear. If Lord Eldon was presiding in this Court, he would, upon his own conditions, be compelled to allow this amendment. Upon this authority, (and there is none greater,) and upon principle, we allow it.

Let the judgment of the Court below be affirmed.