No. 60.—E. MOLYNEAUX *et al.* plaintiffs in error, *vs.* GEO. W. COLLIER, defendant in error.

[1.] After the pleadings are made up, and the cause set down for trial, the bill is not amendable, but within the discretion of the Court, upon special cause shown, and that, whether it be a sworn bill or not.

[2.] An amendment made after issue joined, without cause shown, without an order on the minutes allowing it, and without verification to a sworn bill, stricken out, upon motion, as being irregular.

[3.] Before secondary evidence of a paper can be admitted, the party proposing it must, in good faith, and in a reasonable degree, have exhausted all the sources of information and means of discovery accessible to him, in efforts to account for the original.

[4.] Confidential overtures of pacification, or any other offers or propositions for a compromise, expressly stated to be made without prejudice, or made under the faith of a pending treaty, and into which a party is led by the

Molyneaux *et al. vs.* Collier.

confidence of a compromise taking place, are not admissible in evidence Without this, admissions of a debt due, even *tacitly* made, are good evidence, unless accompanied by a caution that the offer to pay, is confidential.

[5.] A security on the appeal after judgment, is called to prove the non-existence of an agreement between the plaintiff in execution and his co-defendant, who is also the principal in the debt, by which the principal was to be released upon the payment of one-third of the judgment: *Held*, to be called to testify against his interest, and competent to testify, if consenting to do so.

[6.] Insolvency is a personal condition, and whether a party is insolvent, is a conclusion to be drawn from facts proven, and cannot be proved by general reputation.

[7.] One of three defendants seeks to enforce an agreement between himself and the plaintiff, by which he is to be released upon payment of one-third of the judgment. Upon the trial, the existence of such an agreement being in issue, *Held*, that the *solvency* of the other defendants is a fact which the Jury may consider, as going to disprove the making of the agreement.

[8.] It is not error in the Court to decline giving a charge to the Jury, not warranted by the facts of the case.

[9.] In a suit to enforce an agreement entered into by one of three joint defendants to a judgment, and the plaintiff in execution, in which it was agreed that he (the defendant) should be released from the whole debt, upon payment of one-third: *Held*, that a receipt of a payment made upon the judgment by others, anterior to the date of the agreement, may be given in evidence, to show what was due on the judgment, and thereby what was the amount of the one-third agreed to be paid.

[10.] The case of *Cumber vs. Wane*, (1 *Strange*, 425,) reviewed, and its authority sustained.

[11.] Agreements to settle an existing debt, by paying a part, are void for want of consideration, unless some advantage or benefit accrues to the creditor, or detriment to the debtor, from the agreement, other than what springs out of the original contract.

[12.] Where such agreements are *executory*, they do not avail to discharge the debt, until they are executed, unless it is clear that the *promise*, and not the *performance*, is agreed to be the satisfaction.

[13.] An agreement to accept one-third part of a debt, in discharge of an insolvent debtor, from the yearly proceeds of his personal labor, *held* to be on good consideration and valid.

[14.] An agreement to accept one-third part of a judgment against *three*, from *one* who is insolvent, in the yearly proceeds of his labor, in discharge of his liability, *Held* to be void for want of consideration, unless at the time when the agreement was entered into, the other two defendants were also insolvent.

In Equity, from Baker Superior Court.    Tried before Judge PERKINS, April Term, 1853.

This was a bill filed by George W. Collier, against Edward Molyneaux and others.    The bill charges, that in 1838, George W. Collier, James M. Bracewell and Edward St. George, were engaged as partners in the mercantile business, in the Town of Hawkinsville, under the firm, name and style of Collier & Bracewell.    Collier & Bracewell executed their note to John Rawls, for $9360, which note was endorsed by Rawls to Edward Molyneaux, who afterwards sued and obtained a judgment thereon, in Pulaski Superior Court, from which judgment Collier & Bracewell appealed, giving Edward St. George as security on the appeal bond.    In 1840, a judgment was recovered against the parties upon the appeal, from which a *fi. fa.* was issued.    The firm of Collier & Bracewell became insolvent.    The *fi. fa.* was transferred by Molyneuax to Rawls. In 1842, Rawls and Collier entered into an agreement, by which Collier, who was in embarrassed and failing circumstances, was to appropriate the proceeds of his yearly labor to the payment of one-third part of said judgment, and Rawls was to release him from the payment of the balance.    And in pursuance of said agreement, Collier applied said proceeds until the one-third part of the *fi. fa.* was fully paid off and discharged.    That St. George had paid off his one-third part of the *fi. fa.* and that Bracewell, at the time of the agreement, was in possession of property sufficient to pay off the balance of the *fi. fa.* and that Rawls neglected to have the *fi. fa.* levied upon the property of Bracewell, although pointed out by Collier, the complainant in the bill.

The bill charges, that after the death of Rawls, to wit : in 1844, Edward Taylor and Caroline Rawls, administrators of John Rawls, deceased, for the purpose of evading the contract between complainant and Rawls, procured Molyneaux to transfer the *fi. fa.* to the Merchants' Bank of Macon.

That, in violation of said agreement, the Merchants' Bank

Molyneaux *et al. vs.* Collier.

of Macon had caused the *fi. fa.* to be levied upon certain negroes, the property of complainant, in the County of Lee, and certain lands belonging to complainant, and lying in the County of Baker, said levy made in June, 1845; which property was claimed by one Jonathan Davis, which claims were returned to the Superior Courts of Baker and Pulaski Counties, and which were subsequently withdrawn; that the *fi. fa.* was subsequently placed in the hands of the Sheriff of Muscogee County, and by him levied upon a negro woman belonging to complainant.

The bill prayed that the *fi. fa.* might be perpetually enjoined, as to complainant.

To this bill the defendants filed their answers, and the cause was set down for trial.

At the April Term, 1852, of Baker Superior Court, counsel for complainant presented to counsel for defendant, an amendment to the bill, upon which a waiver of copy was served, which amendment charged, that the *fi. fa.* had been fully paid off and discharged, and set forth a receipt to that effect from John Rawls.

At the April Term, 1853, the cause came on to be tried, when counsel for defendants moved the Court to dismiss the amendment. The Court overruled the motion, and counsel for defendants excepted.

On the trial, complainants offered in evidence a copy of the *fi. fa.* first making affidavit, that the "original was levied upon land in Baker County, and returned, with the claim papers, to the Superior Court of that County, and that he supposed it was in that office, but that it could not be found." To which showing, and accounting for the loss of the original *fi. fa.* counsel for defendants objected. The Court overruled the objection, and defendants excepted.

Defendants proposed to read in evidence the depositions of Augustus H. Hansell, who testified, "that George W. Collier did, since the death of John Rawls, offer to settle the *fi. fa.* by giving a settlement of land in Baker County, in pay-

ment thereof, which settlement of land, he (Collier) said was worth fully the amount due on said *fi. fa.*" &c.

To which testimony counsel for complainant objected. The Court sustained the objection, and defendants excepted.

Defendants then proposed to read in evidence the depositions of Edward St. George, to prove the admissions of Collier as to his liability for the whole of said *fi. fa.* as also the solvency of Collier. To the introduction of which testimony counsel for complainants objected, and defendants excepted.

Counsel for complainants proposed to read in evidence a receipt given by Rawls, in 1841, to Bracewell and St. George, for various amounts, to be credited upon the *fi. fa.* and which receipt was set forth in the amendment to the bill. Counsel for defendants objected to the evidence. The Court overruled the objection, and counsel for defendants excepted.

Complainant then proposed to show the insolvency of Collier in 1841 and 1842, from rumor and general reputation, to which testimony counsel for defendants objected. The Court overruled the objection, and counsel for defendants excepted.

Among other things, the Court charged the Jury, "That the contract of release, alleged in the bill, by which Collier was to apply the proceeds of his yearly labor in discharge of one-third part of the *fi. fa.* need not be strictly proved, but would be substantially proved by proof that one-third part of the debt had been paid in any other way or manner, at Collier's instance, and that it is true, as a legal principle, that an allegation of a positive contract is not supported by proof of a contract in the alternative."

The Court farther charged the Jury, "That it ought to be averred in the bill, and proved to the Jury, that Collier was either insolvent or embarrassed, so as to jeopardize the collection of the debt, in order for the agreement to release Collier to have bound Rawls."

Counsel for defendants requested the Court to charge the Jury, "That a judgment debt of record, cannot be discharged or released by an agreement vesting in parol, or a verbal agreement to pay a less amount than the whole debt," which charge

Molyneaux *et al. vs.* Collier.

the Court refused to give, but charged the contrary to be the law, provided the "agreement was made upon a good and sufficient consideration."

Counsel for defendant requested the Court to charge the Jury, "That the great length of time which has elapsed since the contract is alleged to have taken place, is a circumstance which the Jury is authorized to consider, in order to negative the idea of such a contract, and that if they believed, from the evidence, that St. George and Collier were solvent at the time of the contract of release, that this was a circumstance going to negative the existence of such an agreement." The Court refused so to charge. To all which charges and refusals to charge, counsel for defendants excepted. The Jury decreed in favor of the complainant. Whereupon counsel for defendants moved the Court for a new trial, upon several grounds, predicated upon the exceptions taken in the progress of the trial of the cause.

The Court refused to grant a new trial, and counsel for defendants excepted, and upon these several exceptions error has been assigned.

BAILEY, for plaintiff in error.

STROZIER & WORRILL, for defendants.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] This bill was returned to the June Term, 1850. At the December Term following, the answers were in, and the replications filed. At that time, therefore, it was ready for a hearing, and ought to have been set down for trial. After this, to wit: in April 1852, we have the first notice of the amendment. The only notice then given of it is, a waiver of a copy, endorsed by the counsel for the defendants. We infer that it was, without farther solemnity, at that time, filed among the papers, as an authorized amendment to the bill. The record discloses no application to the Court for leave to amend—no

showing upon which to found such application—no consent of parties that the amendment be made, and no order authorizing it. Thus situated, the cause was called for trial in 1853, and the amendment appearing to be a part of the pleadings, counsel for the defendants moved to strike it out, upon the ground that it was irregularly in. This motion being refused, exception was taken.

[2.] The rules of Chancery practice condemn this procedure in case of a bill not sworn to—much more do they condemn it in case of a sworn bill, as was this. This amendment makes a material addition to the complainant's case. It charges that the execution is paid off, and exhibits a receipt for a large amount, going to show that fact. The original bill only charged, that the complainant's one-third had been paid, in pursuance of the agreement between himself and John Rawls, and prayed a perpetual injunction as to him; but the amendment goes for a decree of satisfaction and injunction as to the whole judgment. It was not, therefore, a formal, but it was a vital amendment. When a cause is set down for a hearing, amendments are not matters of right, but are addressed to the sound discretion of the Court, upon special cause shown. It is as difficult to amend a sworn bill as an answer. To either, amendments are allowed with the utmost caution, and for many good reasons, to be found in some of the cases to which I shall presently refer. Here no cause was shown—no leave asked—no judgment or order passed, and no verification of the amendment. It would seem that the amendment was not passed upon by the Court, but put in by counsel as a matter of course. All of which was without precedent, and flagrantly irregular. The record does not show that this amendment was ever answered, or that it was ever taken as confessed, and yet a decree was had on the bill as amended. Such proceedings reproach our Courts of Chancery, and merit, as they now receive, the disapprobation of this Court. We think that the Court, for these reasons, erred in not granting the motion of the defendant below, to strike out this amendment. *Martin vs. Atkinson,* 5 *Ga. Rep.* 390. *Geo. R. R. & Banking Co.*

Molyneaux *et al. vs.* Collier.

*vs. Milner & Co.* 8 *Geo.* 313. *Boyd, Adm. vs. Clements,* 8 *Geo.* 522. *Carey, assignee, vs. Ector, adm'x, et al.* 7 *Ga.* 99. *Peacock vs. Terry,* 9 *Ga.* 137.

[3.]. The plaintiff proposed to read in evidence a copy of the *fi. fa.* appended as an exhibit to his bill, which the Court permitted him to do, notwithstanding the objection of the defendants' counsel, that proper diligence had not been used to procure the original. The *fi. fa.* had been levied upon lands in the County of Baker, where this cause was pending, and a claim interposed; also, at the same time, upon negroes, and a claim interposed, which had been returned to the County of Pulaski, from whence the execution issued. Subsequent to both of these levies, it had been levied upon a slave in the County of Muscogee. The diligence used was as follows, to wit : the plaintiff, Mr. Collier, swore that the original *fi. fa.* had been levied on land in Baker County, which was claimed, and that the claim and *fi. fa.* were returned to the Superior Court of that County, and that he supposed that it was among the claim papers, until informed at the time, by his counsel, that it was not among them, and that he had no knowledge where it was, or to whom to apply, with any prospect of getting it. The Clerk of the Superior Court of Baker County testified, that it was not in his office, and that he did not know who had it. The diligence used then, was an application to the Clerk of the Court of Baker County, to whom the execution had been returned, for it. That was all, and that was not sufficient. Before secondary evidence of a paper can be admitted, according to the ruling of this Court, the party must show that he has, in good faith, and in a reasonable degree, exhausted all the sources of information, and all the means of discovery, accessible to him, in accounting for the original. *Doe ex dem. Vaughn vs. Biggers,* 6 *Ga.* 194. The plaintiff did not come up to this rule, but fell short of a far less stringent rule. He might have sought the original at the hands of the Clerk of the Court in Pulaski, to which Court one of the claims had been returned, with a reasonable prospect of finding it there. The last levy of the execution was made in Muscogee, after it

was returned to the Court with the claim papers, in Baker. Most reasonably it was in the hands of the Sheriff of Muscogee, for there it must have been last, in order to make the levy. To him, certainly, application for information ought to have been made. Whether, under the circumstances, the plaintiff could not have continued, had the copy been ruled out, is a different question. This is a question of diligence. We think the Court erred in admitting the copy.

[4.] Judge *Hansel's* testimony, offered by the defendants below, was improperly rejected. It was proposed to prove by him, that Collier, the plaintiff, "did, since the death of John Rawls, offer to settle the *fi. fa.* by giving a settlement of land in Baker County, in payment therefor, which settlement he said was worth fully the amount due on the *fi. fa.* and desired witness to get an order from the Court of Ordinary of Pulaski County, authorizing the administrators of Rawls to make the settlement as proposed." This was the testimony of Judge *Hansel,* which was rejected. The Court seems to have rejected it, because the witness, upon cross-examination, called the proposition thus to settle the execution, *a compromise.* What a party says in an offer to compromise a debt is not competent testimony, because the admission of such sayings would be in conflict with a sound rule of public policy—the policy of encouraging peaceful, out-door adjustment of cases and causes of litigation.

But was this an offer to compromise the debt due on this execution? We think it was rather an offer to pay it—to pay in lands, instead of money, but still an offer to pay. Confidential overtures of pacification, or any other offers or propositions between litigating parties, expressly stated to be made without prejudice, are excluded. *Corey vs. Britton,* 4 *C. & P.* 462. *Healy vs. Thacker,* 8 *C. & P.* 388. 1 *Greenleaf's Evid.* §192. There is no evidence here that Collier expressly stated that his propositions to *Hansel* were made without prejudice. So an offer to pay a less sum than that claimed, without more, is not admissible; it is irrelevant, neither admitting nor denying the claim. A party may thus

offer to buy his peace without prejudice. *Gregory vs. Howard*, 3 *Esp.* 113. *Marsh vs. Gould*, 2 *Pick.* 290. *Gerrish vs. Sweetser*, 4 *Pick.* 374, 377; *Waymand vs. Hiliand*, 7 *Bing.* 101; 2 *Camp.* 106; 1 *Greenleaf's Evid.* §192. So, if admissions are made without express stipulations that they are made without prejudice, but under the faith of a pending treaty, and into which a party is led by the confidence of a compromise taking place, they are inadmissible. The condition, tacit or express, that no advantage will be taken of the admission, it being made with a view to, and in furtherance of an amicable adjustment, is the test of this rule of evidence. By this test the offer of Mr. Collier was admissible; for there was no such condition, express or implied; the admissions were not made under the faith of a pending treaty for a compromise. There was no such treaty pending. Nor was he induced to make them under the expectation that a compromise would take place. He proposes to Judge *Hansel*, to pay a debt which he admits to be due. He offers lands in payment, and says that the lands are fully worth the amount due on the *fi. fa.* Thus conceding in terms, a debt due. Even if the admission of the claim is tacitly made, unless accompanied with a caution, that the offer to pay is confidential, it is admissible. 1 *M. & M.* 446. *Ibid*, 447, *n.* 2 *Dowl. & Ry.* 358. 1 *Green. Evid.* §192. Judge *Hansel's* saying that it was a compromise, does not make it so. He does not say that Collier called his offer a compromise. He, the witness, judging from the facts, believed it to be a compromise, and so designated it. We also are called to judge, and think that the excluded testimony ought to have been admitted.

The depositions of Mr. St. George, were tendered by the defendants, to disprove the fact of the agreement set up in the bill, under which the plaintiff, Collier, claimed to be released from all liability on the judgment, by proving Collier's admissions that he was bound for the whole amount of that judgment. The Court rejected St. George's testimony, and the defendants excepted. St. George was not a party on the record, but he was a party to the judgment sought to be enjoin-

ed by Collier, as security on the appeal. The agreement upon which Collier relied, and the existence of which St. George was called to negative, was an agreement between Rawls, who is charged in the bill to have been owner of the judgment, and Collier, by virtue of which, Collier was to be released from liability on the judgment, by paying one-third from the yearly proceeds of his labor. Collier and Bracewell were the principals on the judgment, and St. George, as stated, security on the appeal. The testimony of St. George was rejected on the ground of interest. The release of one of the principals, Collier, without the consent of St. George, the surety, would discharge the latter. St. George was called to disprove a fact, which if established, would discharge him. He was called to prove, what if true, to wit, the non-existence of the agreement, would leave him liable on the judgment, and if not true, would discharge him. He was therefore interested. Whether he was compelled to answer, or whether privileged not to answer, may be a serious question. The privilege is personal to the witness, and cannot be set up by a party. St. George did not assert it, being willing to testify. The question of exemption from obligation to testify, was not therefore made in this case, and as I have no time for amateur discussion, I shall content myself with referring on this head to the 452d section of *Prof. Greenleaf's book on Evidence,* and the authorities noted by him.

[5.] St. George was called to testify against his interest, and consenting to answer, there was no legal objection to his depositions going to the Jury. It was said in argument, that the effect of his evidence was to sustain the judgment upon which he was security, and which, under our Statutes, he would be entitled to control against his principal for reimbursement, and therefore he was interested. The reply to this reasoning, is that he would have the right to control the judgment for reimbursement, irrespective of any result of this suit. If there should be a decree enjoining it forever, so far as Collier is concerned, against the right of the plaintiff in execution, or his assignee, (which is the decree which Collier asks,)

yet such decree would not affect the right of St. George to use it for reimbursement as security, against Collier and Bracewell, his principals. Again, it was said that the original debt upon which the judgment is founded, was a debt due by the firm of Collier, Bracewell & Co. of which firm St. George was a member, and being called to prove that Collier admitted that he was bound for the whole of it, he is testifying against his own liability as partner, and therefore interested. The replies are: *First*—that whilst he would have proven Collier's liability to pay the whole debt, he does not swear that Collier was alone liable; he does not say that he (St. George,) is not also liable. *Second*—his liability for the whole debt to the plaintiff in execution, is fixed as a defendant in the judgment; his testimony could not discharge that. He is bound on the judgment, whether a partner or not, of the firm of Collier, Bracewell & Co. and irrespective of any rights or obligations which exist among the members of that firm. The judgment passed against him as security on the appeal. Upon this assignment also, our judgment is that the Court erred.

[6.] We think farther, that the Court erred in permitting the plaintiff below to prove his insolvency by proof of general reputation. Insolvency is a personal condition. Whether A. B. or C. is in a condition of insolvency, is a conclusion, which may be, indeed must be, drawn from facts present to the mind. Facts which demonstrate insolvency may be proven; such as a return of *nulla bona*, or any fact less conclusive than that, which goes to show inability to meet pecuniary obligations. The elementary books do not recognize insolvency as an exception to the general rule, that hearsay is not evidence. Upon the direct question the books are barren of cases. It is not free from difficulty. It was held in *The State vs. Cochran*, upon an indictment for passing counterfeit bills, that to rebut the *scienter*, the fact that the accused was a man of property might be proved by general reputation. 2 *Dev.* 63. The rule there settled, seems to be this, that when the state of a man's property is a question arising collaterally, it may be shown by proof of general reputation. In *Lawson vs. Orear*,

the Supreme Court of Alabama comment upon the case of *The State vs. Cochran,* approvingly, yet rule that "reputation is not admissible to prove insolvency, as that is the legal conclusion from facts to be stated." Judge *Goldthwaite* says, however, that the Court can see no sufficient reason to exclude proof of reputation of facts or circumstances, from which that conclusion might be drawn.

In this case, the question arose collaterally. The main question was whether the agreement set up by Collier in his bill, between himself and the plaintiff in execution, Rawls, was or was not made. Collateral to this, and in order to prove the existence of the agreement, by exhibiting a reason why Rawls should enter into it, Collier proposed to prove his own insolvency at the time. Whilst I must entertain some doubt, I conclude, with my colleagues, that upon principle, the evidence ought to have been excluded. 1 *Greenleaf's Evid.* §§ 98, 99, 100, 101. *Cowen & Hill's Notes, part 1st, page* 702. *Lawson vs. Orear,* 7 *Alab.* 784; 5 *Alab.* 277; 5 *Porter,* 382; 5 *Alab.* 731; 8 *Port.* 258.

[7.] We are of the opinion that the Court erred in not instructing the Jury as requested, that they might consider the fact of the solvency of Bracewell and St. George, two of the defendants in the execution, as going to show that there was no such contract as that set up in the bill, between the plaintiff in execution, Rawls, and Collier. The solvency of these defendants in execution at the time when the contract is charged to have been entered into, is admitted by the complainant in his bill. The *solvency* of two of three defendants in execution, is certainly a reason why the plaintiff in execution should not agree with the third to discharge him, if he would apply the proceeds of his yearly labor to the payment of one-third the execution. If his whole debt was safe, what motive could the plaintiff have to agree to release one of the defendants, upon receiving from him, in the proceeds of his yearly labor, the one-third part? What motive, it may be asked with emphasis, where the agreement would work a discharge of the

Molyneaux *et al. vs.* Collier.

solvent security? He would gain nothing, and lose the liability of the security on the appeal, Mr. St. George.

[8.] But the Court did not err in declining to instruct the Jury that they might consider the time which had elapsed between the making the agreement as charged, and the filing of complainant's bill, as warranting a presumption against the existence of any such agreement. Upon the supposition that there was such an agreement, the plaintiff, Collier, is presumed to have rested upon it, and had a right to believe that Rawls had, and would abide it in good faith. There was no occasion for him to move in a Court of Equity to compel Rawls to keep his covenant, until there was evidence that he had broken, or would break it. Collier could not be put upon diligence until Rawls was in a position adverse to his rights under the agreement. In point of fact, Collier did move for protection against the execution, within reasonable time, after Rawls moved to enforce it. Immediately upon a levy, a claim was put in by his vendee, and the title of the property staked upon the agreement, and Collier's fulfilment. Under these circumstances, such instruction would have been without warrant in the facts, and unjust to Collier.

[9.] Nor did the Court err in admitting in evidence the receipt of 1841, appended to the amendment as an exhibit. *With* the amendment it was clearly admissible, as sustaining the case made in the amendment. That being ruled out, the receipt was admissible, under the allegations in the original bill, according to two views of the case. The argument was, that Collier was to be released upon payment of one-third of the judgment from the yearly proceeds of his labor. The agreement is charged to have been made in 1842, and the receipt is dated in 1841. Collier was to pay one-third of the judgment then due, that is, at the date of the agreement. Inasmuch as this payment appears to have been made anterior to that date, we think it was admissible to show how much was then due on the judgment, and thereby how much was Collier's one-third part. Again, although the receipt does not purport to be a payment by Collier, yet it was admissible, by way of

showing a payment by him in fulfilment of his agreement with Rawls, if indeed and not otherwise, it could be shown by other testimony, that it was made by him or on his account; and to this effect, as touching the receipt, it would be the duty of the Court to instruct the Jury. Counsel for the defendants below, claimed that it ought to be repelled, because it was a receipt for the same payment, appearing as a credit entered on the execution. This objection assumes the identity of the two payments. Whether they are one and the same, is a fact for the Jury to determine.

[10.] By exceptions to the instructions given, and the refusal of the Court to give such as were asked, we are invoked to determine under what circumstances an agreement to discharge a debt, by a promise on the part of the debtor to pay a less sum, can be sustained. This is a matter not fixed with absolute certainty in England. And the English doctrine, so far as it is definitely settled, seems to have received some modifications in this country. Here was a judgment against three, one of whom, Collier, seeks a perpetual injunction, upon the ground, that in 1842, it was agreed between himself and John Rawls, who was then the owner of the judgment, that if he, Collier, would pay one-third of the judgment from the yearly proceeds of his labor, he should be released from farther liability. The bill avers, that Collier has fulfilled his undertaking by paying one-third of the judgment. Whether this agreement can be sustained, is the question—a question to which has been assigned the most distinguished *rolé* in this forensic drama, and upon which able counsel have bestowed their most careful attention. Some of the conclusions of the Court below receive our sanction, whilst from others we are constrained to dissent; and with a view to relieve against needless litigation, we feel ourselves bound to go beyond the questions, in literal strictness, made in the record, but not beyond the inevitable exigencies of the case. The leading case upon this subject, in England, is *Cumber vs. Wane,* (reported in 1 *Strange,* 425.) It has been denied to be law. Lord *Ellenborough* and *Mr. J. Buller*, seem to have doubted its authority. The for-

mer, however, in *Fitch vs. Sutton*, (5 *East.* 230,) whilst admitting that he had said, in argument, in the case of *Heathcoat vs. Crookshanks*, that the case of *Cumber and Wane* had been denied to be law, declared that its authority was sustained by *Pinnell's* case, and that *Pinnell's* case had never been questioned. The case of *Cumber vs. Wane*, is badly reported, and whilst some of the propositions which fell from the Court, may well be questioned, yet, the principle settled by the pleadings and the judgment, is sustained by ample authority, both in England and America.

[11.] The principle is, that a security of equal degree for a smaller sum, cannot be pleaded in an action for the larger sum. It cannot be so pleaded, because there is no consideration to support an agreement of that character. If A, for example, holds a demand against B, evidenced by a promissory note for $100, and agrees to take B's note for $50, and does, in fact, take it, such settlement cannot be pleaded by B, in bar of an action by A, against him on the one hundred dollar note. There is no consideration moving from B to A, and the contract is *nupum dactum.* A. having a debt due for $100 by note, is not bettered one jot or tittle, by taking B's note for a less sum—he is rather damaged. Nor is B's condition any worse. There is no detriment to him—his condition is, indeed, one hundred per cent. better ; in this, that instead of $100, he is to pay but $50. To this extent, the doctrine is immovably fixed. *Cumber vs. Wane*, 1 *Strange*, 425. *Fitch vs. Sutton*, 5 *East.* 230. *Heathcoat vs. Crookshanks*, 2 *Term. R.* 24. *Pinnell's case*, 5 *Reports*, 117. *Lynn vs. Bruce*, 2 *Hen. Black. R.* 317. *Thomas vs. Heathorn*, 2 *B. & C.* 477. 3 *D. & R.* 647, *S. C.*

But it is also well settled, that if there be any benefit to the creditor, or detriment to the debtor, resulting from the new contract, that will be a consideration sufficient to support it. The exceptions engrafted upon the *Cumber and Wane rule*, rest upon a consideration, and that is, the bettering the condition of the creditor, or the making worse the condition of the debtor. The legal possibility of a benefit is stated by Mr.

*Smith,* in summing up the law on this head, to be sufficient to sustain the agreement. The rule of determination is not an impracticable one—indeed, for the most part, it is easy of application. The doctrine, as settled in *Cumber and Wane,* and the principle upon which the exceptions go, may be united in this form of words, to wit: agreements to settle an existing debt by paying a part in a like security, are void, unless some advantage or benefit accrues to the creditor, or detriment to the debtor, from the agreement, other than what springs out of the original contract. The latter part of this rule, has no respect to the form of the new security. If there is a benefit secured to the creditor by the agreement, the agreement is valid, no matter how it is evidenced. It is that which discharges the old debt, and not the garb in which it is clothed. Some of the exceptional cases, are the following : An unliquidated claim for pecuniary damages, will be discharged by an agreement to accept a smaller sum—the liquidation of the smaller sum being a benefit to the creditor. *L ongridge vs. Dorville,* 5 *B. & A.* 117. *Waters vs. Smith,* 2 *B. & Adol.* 889. *Wilkinson vs. Byers,* 1 *Adol. & Ell.* 106.

So, if the debt is not yet due, an agreement to pay a less sum at an earlier day than its maturity, will be upheld, because the anticipation of payment is a benefit to the creditor. *Cumber vs. Wane,* 1 *Strange,* 425. So, also, if a creditor agree with an insolvent debtor to accept a less sum, with security, the security would be a benefit, and sustain the agreement. And upon the principle upon which these exceptions rest, an agreement to accept the personal labor of an insolvent debtor, in value less than the whole debt, would be a valid agreement. His labor, the creditor cannot demand to pay the whole debt, and if he, by the new contract, gets *that,* the debtor being insolvent, his condition is improved. For the same reason, an agreement to accept a part in the yearly *proceeds* of the debtor's labor, he being insolvent, will be a valid agreement; and that would be the case before us, if all the defendants to this judgment were insolvent. Insolvency, in such cas-

es, is indispensable ; for, if the debtor be solvent, no benefit results to the creditor.　In that event, his whole debt is safe.

[12.] Now, in relation to this character of agreements, that is to say, executory agreements, they do not avail to discharge the debt until they are executed, unless it is clear that the. *promise* and not the *performance*, is agreed to be the satisfaction.　*Beens vs. Hearne,* 1 *M. & W.* 326, 1 *Smith's Leading Cases, top page,* 253.

[13.] Thus, I have made, what occurs to me, an intelligible statement of the law of this case, as it is understood in England.　I think it is true, too, that in the main, the American decisions follow those of England.　See *American notes to Smith's Leading Cases,* 1 *vol. top page,* 253.

I proceed to apply these principles to the case under review. The contract was, that Collier, one of the defendants to the judgment, should be released upon his payment to the plaintiff in execution, Rawls, one-third of the whole debt, in the yearly proceeds of his labor.　It was executory, and it is clear that it was the performance and not the *promise,* upon which the release depended.　The bill, however, charges performance, and upon proof of it, the agreement would be free from objection upon the score of its being executory.　Nor, do we suppose that, in proving the execution of the agreement, Collier would be held to prove that he paid literally and specifically the proceeds of each year's labor.　Proof of payment by him, or by any other person on his account, of the amount stipulated, would be sufficient ; and to this effect, and correctly, as we think, the presiding Judge instructed the Jury.　The payment of one-third, whether made by Collier himself, or by any body else for him, the law would consider as being done in pursuance, and in consequence of the agreement.　To make this agreement valid, were there no body bound upon this judgment but Collier, his insolvency at the time, would be indispensable.　He being solvent, no benefit could result to Rawls by the new arrangement, and no detriment to him.　A consideration would be wanting to the agreement.　If, on the contrary, he was insolvent, then the plaintiff stipulates for

that which the judgment could not give him, to wit: the proceeds of the yearly labor of the debtor, and in that he is benefited.

The bill does not charge Collier's insolvency, in so many words, but it charges that he was very much embarrassed, and in a failing condition; and the Court correctly instructed the Jury, that if these allegations were proven, it was sufficient. Nor, did the Court err in saying to the Jury, that a *parol* agreement to pay a part, would discharge Collier, if it was founded on a good and sufficient consideration. That is to say, to the extent that the Court went, the Court was right.

Viewing it in the light of a contract to pay an existing debt, for which he, Collier, alone was bound, and his insolvency being proven, we hold with the Court, that the *parol* agreement was not objectionable because *in parol.* As before stated, the garb in which the agreement is clothed, would, in this case, make no difference. Notwithstanding all these things, we cannot sustain the agreement set up in this bill.

[14.] Upon the principles stated as governing an agreement for a release by paying part, it is a *nude pact.* The judgment here, is against Collier and two others, to wit: Bracewell and St. George. The bill charges Bracewell and St. George, to have been solvent when the agreement with Collier was made, and the proof sustains the bill, as to St. George's solvency. An agreement with one of three defendants to a judgment, who is himself insolvent, the other two being solvent, to release him upon part payment, is without consideration, and void. It does not fall within the principle of the exceptions, and is in conflict with the general rule. To be sustainable, we have seen that the creditor must be benefited or the debtor damaged.

Rawls, by this agreement, derived no benefit, and Collier received no detriment. The latter is not injured by a release of all, upon payment of part, no matter how paid, and although insolvent, because at the time, bound by the judgment to pay the whole debt; nor can Rawls have been in any conceivable way benefited, because the whole debt was available to him,

by the lien which the judgment gave him upon the estate of the two defendants, Bracewell and St. George. Our judgment is, that the complainant in the bill cannot recover, unless all the defendants in the judgment are averred and proven to be insolvent.

Let the judgment be reversed.