No. 4.—EDWARD MOLYNEUX and others, plaintiffs in error, *vs.* GEORGE W. COLLIER.

[1.] Benefit to the creditor or injury to the debtor, will *either* constitute a sufficient consideration to support a new contract between the parties.

[2.] The doctrine has gone to the extent of holding that the legal possibility of a benefit to the creditor, is sufficient to sustain a new 'agreement between him and his debtor.

[3.] Ordinarily, satisfaction, in whole or in part of a *fi. fa.* may be shown at Law.

[4.] Where payment of an execution is complicated with other matters, such as discovery, to ascertain who was the true owner of the *fi. fa.* at the time the money was paid, a resort to Equity being necessary for this purpose, that Court will retain jurisdiction to administer relief also.

In Equity, in Dougherty Superior Court.   Decision on demurrer, by Judge PERKINS, May Term, 1854.

This bill was filed by George W. Collier, and alleged the following state of facts:

Collier, Bracewell and St. George, entered into a partnership, for the purpose of merchandizing at Hawkinsville, under the name of Collier & Bracewell.   Edward Molyneux recovered judgment against Collier & Bracewell, with St. George as surety on the appeal, for $9.360, with interest and costs. The firm was insolvent, and the partners individually liable were in doubtful, if not insolvent circumstances.   John Rawls, with a full knowledge of these facts, purchased this *fi. fa.* from

Molyneux, and held it against the partners.  He was President of the Bank of Hawkinsville, and a large stockholder therein; and as such, controlled large *fi. fas.* and mortgages against St. George.  Bracewell had possession of some property, but there was a cloud over his title, it being claimed by his son-in-law.  Collier, the complainant, was insolvent.  Under these circumstances and in view of these facts, Rawls proposed to Collier, Bracewell and St. George, that if each one of them would, from his personal efforts and yearly labor, pay to him one third the amount of the said *fi. fa.* he would release and discharge the one so complying with this offer, from all farther liability thereon.  Collier and St. George each complied with this proposition.  Bracewell failed to comply, and in 1840, removed beyond the limits of the State, carrying with him the property, negroes and stock in his possession, Rawls permitting him so to remove, without attempting to stop him, or to levy on and try the title to said property, against and in spite of the remonstrances of Collier, and his earnest appeal to him to levy thereon.

Rawls died, and his wife and C. Taylor became administrators upon his estate.  With a view to defraud Collier and St. George, the said administrators procured Molyneux to transfer the said *fi. fa.* to the Merchant's Bank of Macon, in whose name it was proceeding at the time of the filing of the bill, having been levied on property as the property of Collier, for the payment of the remaining third due thereon.

In the bill as originally filed, it was alleged that Bracewell carried away property amply sufficient to pay the said *fi. fa.* and that Rawls permitted him to remove.  In an amendment, this allegation was modified as previously stated.  The amendment also alleged, that St. George, although possessed of a considerable estate, was nevertheless largely involved, and that Rawls held a large claim against him ; and if all his debts were pressed against him, he would have proved to be insolvent.

Exhibits of the mortgages and debts due by St. George were not attached to the bill.  The amendment alleged, also, va-

rious payments by St. George; and also claimed a credit from the sale of a negro, the property of Collier, and prayed discovery as to the payments on the *fi. fa.*

The prayer was for an injunction and general relief.

To this bill a demurrer was filed—

1st. For want of Equity.

2d. A complete remedy at Law, as to the payment of the *fi. fa.*

3d. That the contract set forth in the bill was without consideration and a *nude pact.*

4th. That there is a repugnancy in the statements of the bill and amendment.

5th. That there should have been attached to said bill exhibits of the said mortgages, debts, &c.

The Court over-ruled the demurrer, and error is assigned thereon.

MORGAN & SCARBOROUGH, for plaintiff.

CLARK & STROZIER, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] When this bill was originally filed, the complainant considered it his interest to make it appear that both St. George and Bracewell, his co-debtors, were solvent in 1842. And this Court was satisfied, when this case was up before, that this fact was sufficiently alleged by the bill. But taking a different view of the law of the case, from that entertained by the Counsel for the complainant, the Court held that the very fact that St. George and Bracewell were solvent, instead of constituting a good reason for sustaining the contract entered into between Rawls and Collier, in 1842, was the very ground why that agreement could not be enforced. See 13 *Ga. Rep.* 406.

Well the bill has been amended to meet this new aspect of the case, and it is now insisted that St. George and Bracewell

were insolvent in 1842. And waiving other matters, and without adverting to the past, Counsel have joined issue on the argument, mainly upon the fact, of whether or not the insolvency of St. George and Bracewell are sufficiently charged by the bill as amended? The whole statement, when condensed, amounts, in substance, to this:

That the property in the possession of James M. Bracewell in 1842, would have been sufficient to have paid one third of the execution, although there was a cloud over the title, it being claimed by Peter E. Love as the property of his wife, the daughter of said Bracewell; and that when complainant alleged, in his original bill, that the property was more than sufficient to pay one third of the debt, at the time Bracewell left the State, he only used that term to show, clearly, there was *enough* to pay one third; and further, that this fact was only alleged as an equity, predicated upon the contract made with Rawls, who after making the same, permitted Bracewell to leave the county, with property in his possession, without attempting to subject it, and then attempted to enforce the payment of the whole out of your orator. For in truth and in fact, Bracewell was under serious pecuniary embarrassment, and was held, considered and esteemed insolvent, notoriously. Debts against him were of very little value, and he had no credit on his own account.

And further: that at the date of the agreement between complainant, Collier, and John Rawls, Edward St. George was laboring under very heavy pecuniary liabilities; and if not absolutely insolvent, his condition was very critical and uncertain. There were judgments, to a large amount, open and outstanding against him, and which were pressing for collection, within the knowledge of Rawls. The whole country groaned under a financial crash, threatening a general bankruptcy, and which so depressed the price of property, of all kinds, that men who were nominally possessed of a large quantity of property, in kind, and who, in better times, would have been abundantly able to pay their debts, yet, had they been

forced to settle at this crisis, would have proved insolvent; and such the amended bill charges to have been the condition of St. George, within the knowledge of Rawls.

That in February and May of 1841, St. George executed two mortgages to Rawls, to secure the payment of two several promissory notes, amounting, together, to $6.733$\frac{73}{100}$, which mortgages embraced all the lands and all the negroes that St. George owned, in his own right—besides, four slaves which were the separate estate of his wife; that at this time, the B'k of Hawkinsville held against St. George a judgment amounting to $16.000; and that Rawls was the principal stockholder in said bank; that, in fact, Rawls must be considered as owning and controlling the whole of these demands, and that knowing of the indebtedness of St. George, and the extreme low price of property, and that the judgment in favor of Edward Molyneux against complainants, the said Bracewell and St. George, was older than the mortgages, it put these junior claims in great jeopardy, he entered into this contract, &c.

St. George and Bracewell being thus circumstanced, was the contract between Rawls and Collier, that the latter might pay his third of the *fi. fa.* in services, good? It is well settled, that if there be any benefit to the creditor or detriment to the debtor, resulting from the new contract, that will be a. consideration sufficient to support it. And Mr. Smith, as the result of his review of the whole doctrine upon this subject, says, that if there be a legal possibility of benefit to the creditor, it is sufficient to sustain the agreement. (*Note to Camber vs. Wayne*, 1 *Smith's Leading Cases, p.* 149.)

Can any one doubt, admitting the charge in the amended bill to be true, that Rawls was in danger of losing the whole or some part of his debt? As to Bracewell, we think his inability to pay is made very apparent; and so far as St. George is concerned, while it may be conceded that the partnership debt could have been collected out of him, that being one of the oldest, if not the very oldest, lien against St. George, still, had satisfaction of these prior liens been coerced out of the effects of St. George, the danger was, that the younger mort-

gage debts, by that very means, would be lost. It was, there-fore, just as much the interest of Rawls to protect the younger as the older demands. He was equally interested in all. He would have been just as much loser, by failing to realize the mortgage demand, as either of the others. And it is in this aspect of the case, that the compact with Collier is to be con-sidered; and which has been wholly overlooked by Counsel for the plaintiff in error.

[2.] By getting one third of the large firm debt paid by the personal services of Collier, instead of collecting the whole out of the property of St. George, it increased just to that ex-tent the prospect and probability of getting the mortgage debts discharged. Here, then, is the *possibility*, to say the least of it, of legal benefit to the creditor, in contemplation of the rule .as laid down in the Books.

[3.] But another question is made for our decision by Coun-sel, in his concluding argument, and it is this: Had the com-plainants an adequate Common Law remedy, to prove that the execution was satisfied?

[4.] Ordinarily, payment may be shown at Law. But here, this defence is complicated with other matters. Besides the matters already discussed, it appears from the amended bill, that St. George is dead, and that Collier, as administrator upon his estate, has come into the possession of sundry receipts for payments made by the deceased in his life time, to the plaintiff, the knowledge of which was concealed from Collier by the parties, and he seeks discovery respecting these payments. And that is not all—these payments were made to Rawls, who was not the ostensible owner of the debt. Discovery is prayed as to the proprietorship of Rawls to this claim, and consequent-ly, his authority to receive those payments. There can be no doubt of the jurisdiction.

Of course the case made by the bill, upon all the points, must be supported by proof.